UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

CREEKSIDE CROSSING CONDOMINIUM
ASSOCIATION, INC.,

    Plaintiff,

v.                                    Case No. 2:20-cv-00136-TPB-MRM

EMPIRE INDEMNITY INSURANCE
COMPANY,

    Defendant.
_____/

## MOTION TO DISMISS THE AMENDED COMPLAINT

EMPIRE INDEMNITY INSURANCE COMPANY ("Empire") moves to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) and states:

**I.    Summary**

With the Amended Complaint [D.E. 14], Plaintiff again has failed in its attempt to allege a proper cause of action. Despite this Court's guidance, Plaintiff continues to seek to compel Empire to appraisal through an improper vehicle—this time, instead of a petition for appraisal[1], it is a request for declaratory judgment that includes a demand for appraisal. A request for declaratory relief can declare rights, but it is not a proper vehicle to compel a party to take action, i.e., compel appraisal. For the same reasons set forth in the first motion to dismiss [D.E. 5] and this Court's order [D.E. 13], Count I should be dismissed for failure to state a cause of action.

Count II for breach of contract appears to seek contractual damages based on a failure to advance repair costs. But there is no policy requirement that Empire pay repair

---

[1] *See* D.E. 1: Notice of Removal at Exhibit A: Petition to Compel Appraisal.

1

costs "up-front" before repairs have been completed.[2] At the very least, Creekside has not properly alleged that it has performed repairs and spent funds for those repairs as required by the policy's Replacement Cost coverage. And Plaintiff does not allege whether the damages it seeks are based on the actual cash value ("ACV") of its loss, which would be an alternative basis for damage recovery. Creekside does not properly allege accrued contractual damages resulting from any alleged breach by Empire. Therefore, Count II should be dismissed as well.

II.     **Background**

1.      This matter involves an insurance dispute about claimed Hurricane Irma damages to 27 buildings in Bonita Springs.[3] Except for four buildings, each are insured for varying amounts between $700,000 and $1.2 million.[4]

2.      Creekside sued Empire by filing a petition to compel appraisal.[5] Empire moved to dismiss the petition as an improperly pled request for mandatory injunction.[6] This Court agreed and dismissed the petition, giving Creekside until April 30, 2020 to refile.[7]

3.      On April 30, 2020, Creekside filed a two-count amended complaint.[8] The first count that closely mirrors the relief requested in the initial petition dismissed by this

---

[2] *See* D.E. 14: Amended Complaint and Demand for Jury Trial at Exhibit A: the Policy.
[3] *Id.* at ¶4
[4] As an aside, the amount being claimed totals $11,233,835.08. D.E. 1: Notice of Removal at ¶8.
[5] *See* D.E. 1: Notice of Removal at Exhibit A: Petition to Compel Appraisal.
[6] *See* D.E. 5: Defendant Empire Indemnity Insurance Company's Motion to Dismiss the Petition to Compel Appraisal.
[7] *See* D.E. 13: Order Granting Defendant's "Motion to Dismiss the Petition to Compel Appraisal".
[8] *See* D.E. 14: Amended Complaint and Demand for Jury Trial.

Court. Count I seeks declaratory relief, requesting, like the prior petition, that this Court force Empire into appraisal.[9] The second count is for breach of contract.[10]

    4.    As the excerpt below sets forth, the policy provides for two kinds of reimbursement, but it defaults to reimbursement of actual expenditures after repairs are completed.[11] Repair or replacement cost benefits are payable under the policy's Replacement Cost coverage.[12] Alternatively, Creekside can affirmatively elect to receive reimbursement for the loss in value—the actual cash value ("ACV")—it has suffered to covered property under 3.c. below.[13] Otherwise, the policy requires Empire pay Replacement Cost only after the insured actually makes repairs and only if those repairs are made as soon as reasonably possible after the loss:

---

[9] *Id.* at ¶20 through ¶29.
[10] *Id.* at ¶30 through ¶35.
[11] *Id.* at Exhibit A: the Policy.
[12] *Id.*
[13] *Id.*

**3. Replacement Cost**

a. Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Loss Condition, Valuation, of this Coverage Form.

b. This Optional Coverage does not apply to:

   (1) Personal property of others;

   (2) Contents of a residence; or

   (3) Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac.

   Under the terms of this Replacement Cost Optional Coverage, personal property owned indivisibly by all unit-owners, and the property covered under Paragraph **A.1.a.(6)** of this Coverage Form, are not considered to be the personal property of others.

c. You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

d. We will not pay on a replacement cost basis for any loss or damage:

   (1) Until the lost or damaged property is actually repaired or replaced; and

   (2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

e. We will not pay more for loss or damage on a replacement cost basis than the least of **(1)**, **(2)** or **(3)**, subject to **f.** below:

   (1) The Limit of Insurance applicable to the lost or damaged property;

   (2) The cost to replace the lost or damaged property with other property:

      (a) Of comparable material and quality; and

      (b) Used for the same purpose; or

   (3) The amount actually spent that is necessary to repair or replace the lost or damaged property.

   If a building is rebuilt at a new premises, the cost described in **e.(2)** above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

f. The cost of repair or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.[14]

---

[14] *Id.*

5. The wording of the Amended Complaint appears to allege a breach based on Empire's alleged failure to pay, *in advance*, Replacement Cost coverage benefits.[15] The Amended Complaint specifically alleges that Empire breached "by failing to extend those contractual benefits to return the Insured Premises and/or the Insured to their pre-loss condition," and that Creekside has suffered monetary damages or lost full use of the insured property.[16] The Amended Complaint does not state that repairs were done and, in fact, suggests otherwise. The Amended Complaint does not state that it seeks ACV of the loss. Therefore, the Amended Complaint does not allege whether Creekside seeks recovery of contractual damages based on the Replacement Cost coverage or the ACV of the loss, as set forth in the above provision.

## III. Argument

### A. The Amended Complaint Should Be Dismissed For Failure to State a Proper Action for Relief

#### 1. Count One of the Amended Complaint Fails to State a Proper Cause of Action for Injunctive Relief of Appraisal.

In drafting the Amended Complaint, Creekside evidently ignored the analysis set forth in this Court's Order Granting Defendant's "Motion to Dismiss the Petition to Compel Appraisal"[17] by presenting its demand to compel Empire to appraisal within a declaratory judgment action. In its order dismissing the Petition to Compel Appraisal, this Court observed that Creekside appeared to request injunctive relief, specific performance, and/or breach of contract, but did not set forth the elements of any one of

---

[15] *Id.* at ¶30 through ¶35.
[16] *Id.*
[17] D.E. 13: Order Granting Defendant's "Motion to Dismiss the Petition to Compel Appraisal".

those three potential actions.[18] This Court never suggested declaratory relief was an appropriate substitute for a properly pled action for injunctive relief. Creekside's action for declaratory judgment should be dismissed for the same reasons set forth in this Court's prior Order.

Creekside's declaratory judgment action seeking appraisal amounts to a request for injunctive relief. The request for declaratory action specifically requests that the Court find that Creekside "has properly invoked the Policy's 'Appraisal Clause' and, thus, is entitled to the resolution of the Insurance Claim via binding appraisal proceedings in accordance with the Policy;" and "[c]ompelling the Insurer's appointment of its party-appointed appraiser in this matter."[19] This means that Creekside seeks to an order compelling Empire to hire, pay, and participate in appraisal rather than litigate whether the over $11 million claimed by Plaintiff is correct. This clearly amounts to a suit for a mandatory injunction. *Haddad v. Arnold*, 784 F. Supp. 2d 1284, 1295 (M.D. Fla. 2010) (*citing Exhibitors Poster Exch., Inc. v. National Screen Serv. Corp.*, 441 F.2d 560, 561 (5th Cir. 1971)) ("When a preliminary injunction is sought to force another party to act, rather than simply to maintain the status quo, it becomes a 'mandatory or affirmative injunction.'")

The Amended Complaint fails to sufficiently state a request for injunctive relief. To successfully compel Empire into appraisal, Creekside must establish "(1) a substantial likelihood that [Creekside] will prevail on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on [Empire]; and (4) the entry of relief would serve the public

---

[18] *Id.* at p.2 through p.3.
[19] *See* D.E. 14: Amended Complaint and Demand for Jury Trial.

6

interest." *See KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1268 (11th Cir. 2006).[20] The Amended Complaint does not address any of these four prerequisites for mandatory injunctive relief. *Dear v. Q Club Hotel, LLC*, 2015 WL 4273054 (S.D.Fla., 2015) (claim for injunctive relief dismissed for failure to sufficiently plead required elements.). If Creekside cannot properly allege an action for injunctive relief, it cannot fix that problem by placing it in the apparent catch-all of declaratory relief.

> 2. **Count Two of the Amended Complaint is an Improperly Pled Breach of Contract Action Failing to Allege Creekside is Entitled to Payment Under the Terms of the Policy**

Likewise, Creekside's action for breach of contract is not sufficiently pled and should be dismissed for failure to state a cause of action. Under the policy's Replacement Cost provision, Creekside can seek indemnity for its repair expenditures only *after* actual covered repairs are performed.[21] Contrary to the terms of the policy attached to the Amended Complaint, the breach of contract claim appears to seek recovery of repair costs "up-front" with no mention that repairs have been performed and money spent for such repairs pursuant to the Replacement Cost coverage provision.

Specifically, the Amended Complaint alleges that Empire breached "by failing to extend those contractual benefits to return the Insured Premises and/or the Insured to their pre-loss condition," and that Creekside has suffered monetary damages or lost full

---

[20] As explained in the first motion to dismiss, the mandatory injunction sought by the Petition is procedural, and in this Court it must be reviewed for sufficiency under federal law, pursuant to the *Erie* Doctrine. *See Ferrero v. Associated Materials, Inc.*, 923 F.2d 1441 (11th Cir. 1991). [D.E. 5, p.3] This is because Federal Rule of Civil Procedure 65 sets forth standards for injunctive relief, and the federal rules of civil procedure must be applied by federal courts, "to the exclusion of any contrary state procedure as long as the rule is both constitutional and within the scope of the rules' enabling act." *Ferrero*, 923 F. 2d at 1448.

[21] *See* D.E. 14: Amended Complaint and Demand for Jury Trial at Exhibit A: the Policy.

7

use of the insured property.[22] Empire has no obligation to extend, in advance, contractual benefits for repairs—what Creekside describes as benefits *to return the Insured Premises to preloss condition*—until repairs are completed.[23]

> d. We will not pay on a replacement cost basis for any loss or damage:
> (1) Until the lost or damaged property is actually repaired or replaced; and
> (2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.[24]

*See CMR Constr. & Roofing, LLC v. Empire Indem. Ins. Co.*, 2020 WL 1557887, at *2 (M.D. Fla. Apr. 1, 2020) (finding for insurer in breach of contract action where insured's assignee did not provide evidence of repairs and did not make a claim for actual cash value); *see also Buckley Towers Condo., Inc. v. QBE Ins. Corp.,* 395 F. App'x 659, 662 (11th Cir. 2010)(finding that payment of replacement cost was not due until repairs actually occurred).

Effectively, Creekside has pled itself out of a cause of action for repair costs by effectively alleging it has not performed repairs as required for the Replacement Cost coverge benefits it seeks. Or at the very least, it has not alleged—as it must—it has performed repairs and incurred expenses for which it seeks indemnification.

Empire is not being overly demanding, here, with respect to a proper pleading of an action seeking insurance policy benefits. In an analogous case, an insured who was denied benefits under a PIP policy failed to allege in the complaint that she was seeking to recover for actual medical treatment and her incurred medical bills. *See Rader v.*

---

[22] *Id.* at ¶32 through ¶34.
[23] *Id.* at Exhibit A: the Policy.
[24] *Id.*

8

*Allstate Ins. Co.*, 789 So. 2d 1045, 1047 (Fla. 4th DCA 2001), *cause dismissed*, 816 So. 2d 128 (Fla. 2001). Instead, the insured sued for breach of contract and claimed that she needed future medical care. In other words, the insured was suing for up-front payment of anticipated medical bills for anticipated medical treatment even though she was not entitled to such up-front payment. The *Rader* court affirmed the trial court's dismissal of the case with prejudice for the following reason: "Since petitioner did not allege that she incurred any medical bills that were denied or refused by Allstate, she failed to plead damages." Likewise, since Creekside did not allege that it performed repairs and spent money on repair costs denied or refused by Empire, it failed to plead damages.

In a similar case, *Cruz v. Union General Insurance*, 586 So.2d 91 (Fla. 3rd DCA 1991), the insured sued Union General for PIP benefits. After receiving an IME report, Union General denied coverage and further payments for any medical bills incurred after the denial letter. The insured sued, seeking compensation for medical expenses already accrued and future medical expenses. The appellate court affirmed the dismissal of the action for declaratory relief for future medical expenses, stating that the insured "has a right to be compensated only for benefits that have already accrued." *Id*. at 92.

Again, Creekside complains that Replacement Cost benefits "to return the property to pre-loss condition" were not paid up-front.[25] Fundamentally, it complains of an un-accrued right to benefits and damages. That is why the breach of contract count and the Amended Complaint should be dismissed.

---

[25] *Id*. at ¶33.

Note that Creekside did not plead a claim to recover the actual cash value of its loss. Actual cash value refers to the loss in value caused by a covered loss. It is not a repair cost to restore the property to "preloss condition" as alleged by the Amended Complaint. Under the policy, to be entitled to ACV, Creekside must allege that it informed Empire of its claim for ACV within 180 days of the date of loss:

> c. You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.[26]

Creekside failed to allege that it provided any notice of a claim for ACV or that it gave notice of such a claim within the required 180 days after the loss. But this actually is a moot point because Creekside clearly seeks to recover un-accrued repair cost under the Replacement Cost coverage, not ACV.

WHEREFORE, Empire prays that this Court dismiss the Amended Complaint and for such further relief as this Court deems appropriate.

BUTLER WEIHMULLER KATZ CRAIG LLP

*/s/Kaitlyn M. Dugas*
J. PABLO CACERES, ESQ.
Florida Bar No.: 131229
pcaceres@butler.legal
KAITLYN M. DUGAS, ESQ.
Florida Bar No.: 1004136
Secondary: jfan@butler.legal; mratliff@butler.legal
cjenkins@butler.legal

---

[26] *Id.* at Exhibit A: the Policy.

400 N. Ashley Drive, Suite 2300
Tampa, Florida 33602
Telephone: (813) 281-1900
Facsimile: (813) 281-0900
*Attorneys for Defendant, Empire Indemnity Insurance Company*

## CERTIFICATE OF SERVICE

I certify that a copy hereof has been furnished to:

Sanjay Kurian, Esq.
Becker & Poliakoff, P.A.
Six Mile Cypress Corporate Park
12140 Carissa Commerce Court, Suite 200
Fort Myers, FL 33966
Counsel for Plaintiff

by ECF/CM on May 21, 2020.

/s/Kaitlyn M. Dugas
KAITLYN M. DUGAS, ESQ.