UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CREEKSIDE CROSSING CONDOMINIUM
ASSOCIATION, INC.,

Plaintiff,

vs.                                                                 Case No.: 2:20-cv-00136-JLB-MRM

EMPIRE INDEMNITY INSURANCE
COMPANY,

Defendant.

_____/

## PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT

Plaintiff, CREEKSIDE CROSSING CONDOMINIUM ASSOCIATION, INC. ("Association"), by and through its undersigned counsel, and pursuant to this Court's Orders and Federal Rule of Civil Procedure 56, files its Motion for Summary Judgement in favor of the claims plead in the Association's Amended Complaint and in support thereof, states as follows:

### I. BACKGROUND

This claim arises out of hurricane damage caused to the Creekside Crossing Condominium ("Condominium" or "Insured Premises"). On September 10, 2017, Hurricane Irma made landfall in Southwest Florida and caused damage to the Insured Premises. The claimed damage at issue includes, but is not limited to, the following improvements: roofs, windows, doors, and building exteriors (collectively, the "Loss"). At the time of the Loss, the Condominium was insured by Empire Indemnity Insurance Company ("Empire") under policy number ECL9490456-03

("Policy").[1] The Association submitted a claim for its Loss and Empire opened coverage, issuing some payment in this matter. However, a dispute arose between Empire and the Association as to the amount of the Loss.

The Association then filed a Petition to Compel Appraisal ("Petition") in the Circuit Court for Lee County, Florida.[2] The Association filed its Petition pursuant to the Policy's appraisal provision, which allows appraisal to be invoked by either party when there is a disagreement as to the amount of loss.

Empire removed the action to this Court and moved to dismiss the Petition,[3] arguing that the Petition failed to state a proper action for injunctive relief. On April 17, 2020, this Court dismissed the Petition without prejudice on procedural grounds for failure to state a claim and directed the Association to file an amended complaint. The Association filed its Amended Complaint on April 30, 2020[4] and Empire filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[5] On June 12, 2020, the Association filed its Response in Opposition to Empire's Motion to Dismiss;[6] thereafter Empire filed its Reply to the Association's Response in Opposition to the Motion to Dismiss.[7]

On July 8, 2020, the Association filed a Motion to Compel Appraisal and Stay Proceedings ("Motion to Compel"), therein requesting that the Court issue an order compelling Empire to participate in contractual appraisal and to stay the proceedings pending completion of the appraisal

---

[1] A true and correct certified copy of the Policy is attached as Exhibit A.
[2] Complaint/Petition to Compel Appraisal (Doc. 3).
[3] Motion to Dismiss (Doc. 5).
[4] Amended Complaint (Doc. 14).
[5] Motion to Dismiss the Amended Complaint (Doc. 18).
[6] Response in Opposition to Defendant's Motion to Dismiss the Amended Complaint (Doc. 21).
[7] Reply to Plaintiff's Response in Opposition to Defendant's Motion to Dismiss the Amended Complaint (Doc. 25).

process.[8] Empire filed its Response in Opposition[9] and the Association subsequently filed its Reply.[10]

On September 2, 2020, the Court denied Empire's Motion to Dismiss, upheld the Association's claim for declaratory relief and breach of contract, and required Empire to Answer the Association's Amended Complaint.[11] In addition to ruling on the Motion to Dismiss, the Court briefly addressed the Association's separately filed Motion to Compel. In doing so, the Court held that Empire's refusal to submit to the Policy's appraisal provision is the sole issue in dispute and that the Association's Motion to Compel is equivalent to a motion for summary judgment. Empire filed its Answer to the Amended Complaint on September 16, 2020.[12]

On October 19, 2020, the Court issued an Order denying the Association's Motion to Compel without prejudice.[13] The Court ruled that the Association may renew its Motion to Compel by taking into account the Court's ruling in its September 2, 2020 Order denying the Motion to Dismiss, which discussed the applicability of the summary judgment standard within the appraisal context.

The Association now brings this Motion for Summary Judgement regarding the issue of appraisal based on this Court's prior Orders. The Association incorporates and reasserts the arguments set forth in its Motion to Compel in addition to the facts of the record and evidence provided herein. Therefore, the Association respectfully requests an Order of summary judgement in favor of the Association on the issue of compelling appraisal.

---

[8] Motion to Compel Appraisal and Stay Proceedings (Doc. 26).
[9] Response in Opposition to Plaintiffs Motion to Compel Appraisal and Stay Proceedings (Doc. 29).
[10] Reply to Defendant's Response in Opposition to Plaintiffs Motion to Compel Appraisal (Doc. 35).
[11] Order dated: September 2, 2020 (Doc. 36).
[12] Answer, Affirmative Defenses and Demand for Jury Trial (Doc. 37).
[13] Order dated: October 19, 2020 (Doc. 38).

## II.  STATEMENT OF MATERIAL FACTS

The facts the Association seeks to be deemed as established and the record evidence supporting them are as follows:[14]

1. Empire issued Creekside a contract for insurance bearing policy number ECL9490456-03 ("Policy"). (Doc. 14 ¶ 6); (Doc. 37 ¶ 6); (Pfleger Aff. ¶ 3).

2. The Policy was in full force and effect at the time of the disputed Loss. (Doc. 14 ¶ 8); (Doc. 37 ¶¶ 6, 8).

3. Paragraph E(2) of the Policy's Condominium Coverage Form contains the following appraisal provision:

   **Appraisal**
   If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

   a. Pay its chosen appraiser; and

   b. Bear the other expenses of the appraisal and umpire equally.

   If there is an appraisal, we will still retain our right to deny the claim.

   (Exhibit A: Policy – Form CP 00 17 06 07, page 9 of 14); (Doc. 36 at 2).

4. The Association submitted an insurance claim to Empire in April 2018. (Pfleger Aff. ¶ 5).

5. Empire opened coverage and, on September 4, 2018, issued a first payment to the Association in the amount of $1,315,395.45 for its Loss. (Pfleger Aff. ¶ 7); (Rothring Aff. ¶ 5).

6. On December 6, 2018, the Association submitted a sworn proof of loss to Empire. (Rothring Aff. ¶ 6).

---

[14] In addition to the established record, the Association cites the sworn affidavits of Frederick W. Pfleger (attached hereto as Exhibit B) and Timothy Rothring (attached hereto as Exhibit C) in further support of its Statement of Material Facts.

7. On December 6, 2018, the Association made a written demand for appraisal. (Rothring Aff. ¶ 7).

8. Empire rejected the Association's December 6, 2018 proof of loss and demand for appraisal. (Rothring Aff. ¶ 8).

9. On February 14, 2019, the Association submitted a second sworn proof of loss to Empire. (Rothring Aff. ¶ 9).

10. On February 14, 2019, the Association made a second written demand for appraisal. (Rothring Aff. ¶ 10).

11. On August 12, 2019, Empire issued a second payment to the Association in the amount of $163,993.16. (Pfleger Aff. ¶ 9); (Rothring Aff. ¶ 12).

12. Empire estimated that the Association's damages are $2,665,730.25. (Rothring Aff. ¶ 13).

13. There is a disagreement between the Association and Empire as to the amount of the Loss. (Doc. 36 at 1); (Doc. 14 ¶ 14); (Doc. 5 at 2 n. 1).

14. The Association has demanded appraisal pursuant to the Policy. (Rothring Aff. ¶¶ 7, 10); (*See generally* Doc. 3, Doc. 14, and Doc. 26).

15. Empire has not agreed to appraisal pursuant to the Policy. (Doc. 14 ¶ 13); (Doc. 37 ¶ 13); (Pfleger Aff. ¶ 13); (Doc. 36 at 8).

16. Empire demanded the Association conduct a survey of its unit owners, which the Association conducted via email and provided the results to Empire in August 2019. (Pfleger Aff. ¶ 8); (Rothring Aff. ¶ 11).

17. The Association has made the Condominium available for inspection upon request by Empire, and multiple inspections have occurred. (Doc. 14 ¶ 11); (Doc. 37 ¶ 11).

18. Empire inspected the property on May 7, 2018 and on April 15, 2019. (Doc. 37 ¶ 11).

19. On September 25, 2019, Association representative, John Vandermeer, participated in an examination under oath conducted by counsel for Empire. (Pfleger Aff. ¶ 11); (Doc. 14 ¶ 10); (Doc. 37 ¶ 10).

20. On October 6, 2020, Association representative, Fred Pfleger, participated in a second examination under oath conducted by counsel for Empire. (Pfleger Aff. ¶ 12).

21. The Association has produced documents as requested by Empire. (Doc. 14 ¶ 12); (Doc. 37 ¶ 12).

### III. LEGAL STANDARD

Summary judgment shall be rendered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In making this assessment, the Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997) (citing *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993)), and "must resolve all reasonable doubts about the facts in favor of the non-movant." *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.*, 894 F.2d 1555, 1558 (11th Cir. 1990) (citing *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983)).

"By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248 (citation omitted). A dispute about a material fact is a "genuine" issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* However, "[t]he mere existence of a scintilla of evidence in support of the [ ] position will be insufficient; there must be evidence on which the

jury could reasonably find for the [non-movant]." *Id.* at 252.

"For factual issues to be considered genuine, they must have a real basis in the record.... [M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (internal citation omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56(c)).

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. In those cases, there is no genuine issue of material fact "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

## IV. ARGUMENT

The Association has sufficiently plead a cause of action for both breach of contract and declaratory relief. (*See generally* Doc. 36). However, both counts, as determined by the Court, focus strictly on Empire's refusal to submit to contractual appraisal. The Court observed that "Empire's refusal to submit to the appraisal provision in Paragraph E(2) is the only properly pleaded issue in this action". *Id*. at 8. The Court further noted that the Association's Motion to Compel is equivalent to a summary judgment motion. *Id*. at 9 (citing *Waterford Condo. Ass'n of Collier Cty., Inc. v. Empire Indem. Ins. Co.*, 2019 WL 3852731, at *2 (M.D. Fla. 2019)). As such,

the Association now files this Motion for Summary Judgment based on this Court's prior rulings.

### A. The Association is Entitled to Appraisal as a Matter of Law

As set forth in the Association's Motion to Compel, Florida courts treat insurance policies as contracts. *See Hepp v. Paul Revere Life Ins. Co.*, 120 F. Supp. 3d 1328, 1334 (M.D. Fla. 2015)*; see also Auto–Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla.2000). Not only is an insurance policy a contract, but where the language of a policy is plain and unambiguous, the court must enforce the policy as written. *GEICO Marine Ins. Co. v. Shackleford*, 945 F. 3d 1135, 1140 (11th Cir. 2019) (quoting *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003) ("Under Florida law, we first look to the text of the policy and construe the policy 'in accordance with [its] plain language.'")). Further, the terms of a policy are to be construed in a manner that provides the broadest coverage to an insured. *Three Palms Pointe, Inc. v. State Farm Fire & Cas. Co.*, 250 F. Supp. 2d 1357, 1363 (M.D. Fla. 2003) (citing *Northbrook Property & Casualty Ins. Co. v. R & J Crane Service, Inc.*, 765 So. 2d 836, 840 (Fla. 4th DCA 2000)); *see also Hepp*, 120 F. Supp. 3d at 1335 (quoting *Berkshire Life Ins. Co. v. Adelberg*, 698 So. 2d 828 (Fla. 1997) ("It has long been a tenet of Florida insurance law that an insurer, as the writer of an insurance policy, is bound by the language of the policy, which is to be construed liberally in favor of the insured and strictly against the insurer.")).

Contracting parties may be required to engage in appraisal when the parties have expressly agreed by contract. *Citizens Prop. Ins. Corp. v. Casar*, 104 So. 3d 384, 385 (Fla. 3d DCA 2013) ("Appraisals are creatures of contract."). Whether the parties can be compelled to participate in the appraisal process depends on the provisions of the insurance policy. *Citrus Contracting LLC v. Philadelphia Indem. Ins. Co.*, 2019 WL 5191417, at *2 (M.D. Fla. 2019), report and

recommendation adopted, 2019 WL 5190925 (M.D. Fla. Oct. 15, 2019). "In Florida, appraisal provisions contained within insurance policies are generally treated the same as arbitration provisions." *Wright Way Emergency Water Removal, LLC v. Mt. Hawley Ins*. Co., 2016 WL 9526569, at *2 (M.D. Fla. 2016). Additionally, "enforcement of appraisal provisions are preferred over lawsuits 'as they provide a mechanism for prompt resolution of claims and discourage the filing of needless lawsuits.'" *Id*. (quoting *First Protective Ins. Co. v. Hess*, 81 So. 3d 482, 485 (Fla. 1st DCA 2011)).

Accordingly, the Middle District has specifically held that "[t]he Court should compel appraisal whenever the parties have agreed to appraisal and 'the court entertains no doubts that such an agreement was made.'" *Citrus Contracting LLC*, 2019 WL 5191417, at *3 (quoting *Preferred Mutual Ins. Co. v. Martinez*, 643 So. 2d 1101, 1103 (Fla. 3d DCA 1994)); *see also J.P.F.D. Investment Corporation v. United Specialty Insurance Company*, 2017 WL 4685254, at *1 (M.D. Fla. 2017) (directing the parties to obtain an appraisal in the manner prescribed in the insurance policy).

The Florida Second District Court of Appeal recently considered a comparable set of facts in affirming and compelling appraisal from the Circuit Court for Collier County. *See American Capital Assurance Corporation v. Leeward Bay at Tarpon Bay Condominium Association, Inc.*, No. 2D20-165, 2020 WL 6478224, at *1 (Fla. 2d DCA 2020). In that case, the condominium association made a claim for Hurricane Irma-related damages and its insurance carrier opened coverage. *Id*. at *1. The association then disputed the claim due to the inadequacy of the payment, resulting in the association making a demand for appraisal and moving the trial court to compel same as the carrier had already opened coverage. *Id*. The carrier asserted coverage defenses taking

the position that the association overstated its estimate of loss. *Id* at *3. The court held that once coverage is conceded by the carrier, appraisal is appropriate and stated that the case presented a coverage decision that could be determined concurrently with the appraisal as the case "necessarily involves the amount of loss; any coverage dispute is intertwined with the amount of loss." *Id*. In so concluding, the Second District found the trial court was within its discretion to compel appraisal, despite questions of coverage raised by the insurer, because coverage had previously been opened and the amount of loss was clearly in controversy. *Id*. *3-4.[15]

1. <u>There Is No Genuine Issue of Material Fact as to Whether the Policy Exists.</u>

Here, it is undisputed that a contract for insurance exists between the Association and Empire. Empire admits in its Answer that the subject Policy was in full force and effect at the time of the disputed Loss. (Doc. 37 ¶¶ 6, 8). The Affidavit of Frederick W. Pfleger also supports the undisputed fact that a contract for insurance exists between the Association and Empire. (Pfleger Aff. ¶ 3). There is no genuine issue of material fact as to whether the Policy exists.

2. <u>There is No Genuine Issue of Material Fact as to Whether the Policy Contains an Appraisal Clause.</u>

It is also undisputed that the Policy contains a clear and unambiguous appraisal provision. As the Court noted in its September 2, 2020 Order, "Paragraph E(2) of the Policy's Condominium Coverage Form contains an appraisal process that may be invoked by either party in the event of a disagreement about the amount of loss." (Doc. 36 at 2). In responding to the Association's citation of this appraisal provision, Empire "[a]dmitted that the excerpt appears to be a provision taken from the policy." (Doc. 37 ¶ 9). The attached certified Policy, which was provided by

---

[15] The Second District also certified conflicts with various cases from the Fourth District Court of Appeal as it pertained to the conduct of any coverage dispute contemporaneously or prior to any appraisal.

Empire, restates the language of Paragraph E(2) cited by the Court.[16] Therefore, it is undisputed that the subject appraisal provision cited by the Court exists within the Policy.

    3. <u>There is No Genuine Issue of Material Fact as to Whether the Parties Disagree on the Amount of Loss.</u>

The appraisal clause states that if the parties disagree on the amount of loss, either party may make a written demand for an appraisal of such loss. (Doc. 36 at 2). The Policy contains no other conditions precedent to demand appraisal and states that appraisal is mandatory if invoked by either party.[17] It is undisputed that there is a disagreement on the amount of the Loss as this fact has been expressly recognized by both parties; as stated by Empire: "The amount in controversy is about $11 million …. Plaintiff submitted a Sworn Statement in Proof of Loss asserting that the full replacement cost of its claim is $13,205,220.94 …. Empire previously paid Plaintiff $1,315,395.45. Therefore, the amount in controversy is at least $11,233,835.08."[18]

Empire estimated that the Association suffered $2,665,730.25 in damages under the Policy. (Rothring Aff. ¶ 13, Ex. F). The Association affirms that it was initially paid $1,315,395.45 by Empire and received a second payment from Empire in the amount of $163,993.16 for its Loss. (Pfleger Aff. ¶¶ 7, 9). The Association disagreed with the amount of coverage extended by Empire and subsequently demanded an adjustment of the claim. In support of its claim, the Association submitted a sworn proof of loss to Empire with a full cost of repair or replacement value of $13,205,220.94. (Rothring Aff. ¶ 9, Ex. D). As noted by the Court, "[a] dispute subsequently arose between the parties regarding the amount of the Association's loss." (Doc. 36 at 1 (citing Doc. 14 ¶ 14)). There is no issue of material fact as to whether a dispute exists between the parties regarding

---

[16] *See* Exhibit A: Policy – Form CP 00 17 06 07, page 9 of 14.
[17] *Id*.
[18] Notice of Removal (Doc. 1 ¶ 8); Motion to Dismiss (Doc. 5 at 2 n. 1).

the amount of the Loss.

4. <u>There is No Genuine Issue of Material Fact as to Whether the Association Has Demanded Appraisal.</u>

Pursuant to the Policy requirement that a written demand for appraisal be made, the Association first requested appraisal on December 6, 2018. (Rothring Aff. ¶ 7). Over the next two years, the Association continued to formally demand appraisal prior to and within the litigation context:

a) Proof of Loss Letter – Dated: Dec. 6, 2018 (Rothring Aff. ¶ 7);

b) Proof of Loss Letter – Dated: Feb. 14, 2019 (Rothring Aff. ¶ 10);

c) Civil Remedy Notice, Filing No. 455931;

d) Petition to Compel Appraisal (Doc. 3);

e) Amended Complaint (Doc. 14); and

f) Motion to Compel Appraisal and Stay Proceedings (Doc. 26).

However, despite the Association's numerous demands for appraisal, Empire has and continues to avoid its contractual obligations: "Admitted that Empire has not agreed to go to appraisal." (Doc. 37 ¶ 13); (Pfleger Aff. ¶ 13). Therefore, it is undisputed that Empire has breached the Policy by refusing to participate in contractual appraisal.

B. **<u>The Association Has Satisfied its Post-Loss Obligations.</u>**

Further, there is no genuine dispute as to whether the Association has satisfied its post-loss obligations, thereby preserving its right to appraisal under the Policy.

"A condition precedent to compelling appraisal is that the insured satisfy all post-loss obligations set forth in the insurance policy." *Indian Harbor Insurance Company v. International Studio Apartments, Inc.*, 2009 WL 10668574, at *4 (S.D. Fla. 2009) (citing *Jacobs v. Nationwide*

*Mut. Fire Ins. Co.*, 236 F.3d 1282, 1285-86 (11th Cir. 2001); *Galindo v. ARI Mut. Ins. Co.*, 203 F.3d 771, 775-77 (11th Cir. 2000); *U.S. Fid. & Guar. Co. v. Romay*, 744 So. 2d 467, 471-72 (Fla. 3d DCA 1999)). "[T]he insurer's rights tend to be measured by reasonableness, with the courts attempting to balance the insurer's legitimate interest in ascertaining the validity and extent of the claim against the insured's ... rights to both privacy and prompt payment of sums due under the terms of the contract." *Fla. Gaming Corp. v. Affiliated FM Ins. Co*., 502 F.Supp.2d 1257, 1261 (S.D. Fla. 2007) (internal quotations and citation omitted). Nevertheless, the insured is held to reasonably strict compliance with the terms of the policy. *See Am. Fire &Cas. Co. v. Collura*, 163 So. 2d 784, 788 (Fla. 2d DCA 1964) ("[T]he insured is bound to cooperate with his insurer and to abide, both in letter and in spirit, with the terms of the contract; or he should at least be held to reasonably strict compliance with the terms thereof.") (citation omitted).

In its Response in Opposition to the Motion to Compel, Empire argues that the Association has not complied with conditions precedent to invoking appraisal under the Policy. (Doc. 29 at 5-6). Empire specifically cites *Indian Harbor*, and almost exclusively relies on its holding to formulate a defensive summary judgement argument. *Id*. at 6. Specifically, Empire cites the *Indian Harbor* holding denying a request for appraisal because the insured had failed to provide competent evidence of its compliance with all conditions precedent to demanding appraisal. *Id*. (citing *Indian Harbor*, 2009 WL 10668574, *4) ("A condition precedent to compelling appraisal is that the insured satisfy all post-loss obligations set forth in the insurance policy."). In that case, the court determined that reasonable compliance with post-loss obligations is an "element essential" to a claim for appraisal. *Indian Harbor*, 2009 WL 10668574, *4.

The *Indian Harbor* court found that the insured had failed to meet its burden of demonstrating an entitlement to judgment as a matter of law, highlighting the Rule 56 requirement that the moving party bear the responsibility of identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Id*. (citing *Celotex Corp.*, 477 U.S. at 323). The court based its holding on the contrasting quality of evidence produced by each party in support:

> "[Insurer], citing [] testimony, correspondence between the parties, and an affidavit, argues [Insured] has not reasonably complied with its post-loss obligation to produce documentation."

Whereas:

> "[Insured], citing no evidence whatsoever, contends it has produced 'hundred of documents,' including 'numerous contracting reports, change orders, estimates, photographs and other available documentation.'"

*Id*. at *4.

Thus, the court determined that without actual evidence of the insured's compliance with its post-loss obligations, it could not grant summary judgment for appraisal in favor of the insured.

Here, the record evidence overwhelmingly supports the Association's compliance with the Policy's post-loss conditions:

1. <u>The Association Has Complied with Empire's Requests for Inspections.</u>

Throughout the course of Empire's investigation of the claim, the Association has made the Condominium available for inspection upon Empire's request: "Admitted that Empire inspected the property on May 7, 2018 and on April 15, 2019." (Doc. 37 ¶ 11).

2. <u>The Association Has Complied with Empire's Requests for Examinations Under Oath.</u>

The Association has also complied with multiple examinations under oath. On August 14, 2019, counsel for Empire requested its first examination under oath. As admitted by Empire, the Association complied and an examination under oath of the Association's representative took place on September 25, 2019. (Pfleger Aff. ¶ 11); (Doc. 37 ¶ 10). On July 29, 2020, as highlighted in its Response in Opposition to the Motion to Compel, Empire requested another examination under oath of the Association's representative. (Doc. 29, Ex. A). The Association complied once again and participated in a second examination under oath on October 6, 2020. (Pfleger Aff. ¶ 12).

3. <u>The Association Has Complied with Empire's Requests for Documents.</u>

The Association has produced documents as requested by Empire. (Doc. 14 ¶ 12); (Doc. 37 ¶ 12). Specifically, prior to the September 25, 2019 examination under oath and in response to Empire's request, the Association produced thousands of documents from both the Association's records and the claim records of its public adjuster.[19]

4. <u>The Association Has Complied with Empire's Request for a Survey.</u>

Empire requested that the Association conduct a survey of individual units to assist in identifying damage. (Pfleger Aff. ¶ 8); (Rothring Aff. ¶ 12). The Association complied with this request and conducted the damage survey via email. *Id*. The results of this survey were then submitted to Empire in August 2019. *Id*.

5. <u>Summary of the Association's Compliance with Post-Loss Obligations.</u>

In summary, the Association has complied with the following requests by Empire:

- May 7, 2018 – Property Inspection. (Doc. 14 ¶ 11); (Doc. 37 ¶ 11).

---

[19] On September 17, 2019, the Association produced to Empire the following documents: CREEKSIDE000001 – CREEKSIDE001147 and CREEKSIDE-KEYS000001 – CREEKSIDE-KEYS004562.

- April 15, 2019 – Property Inspection. (Doc. 14 ¶ 11); (Doc. 37 ¶ 11).

- August 2019 – Individual Unit Survey. (Pfleger Aff. ¶ 8); (Rothring Aff. ¶ 12).

- September 25, 2019 – Examination Under Oath. (Doc. 14 ¶ 10); (Doc. 37 ¶ 10).

- October 6, 2020 – Examination Under Oath. (Pfleger Aff. ¶ 12).

- The Association has produced documents as requested by Empire. (Doc. 14 ¶ 12); (Doc. 37 ¶ 12).

There is no question that the Association has *reasonably* complied with the Policy. It is well-settled that satisfaction of post-loss obligations in an insurance policy is measured on a "reasonableness" standard. *See Fla. Gaming Corp. v. Affiliated FM Ins. Co.*, 502 F.Supp.2d 1257, 1261 (S.D. Fla. 2007). The Association has permitted multiple property inspections, conducted a unit survey, produced thousands of documents, and participated in two examinations under oath over the course of Empire's two-plus year investigation of the claim. Furthermore, the Association has and continues to comply with Empire's on-going deposition and written discovery requests regarding this litigation. As such, this evidence overwhelmingly supports reasonable compliance with the Policy's post-loss conditions.

Therefore, based on the undisputed facts, the Court should grant summary judgment in the Association's favor on the issue of compelling appraisal.

## V. CONCLUSION

As previously expressed to the Court, the Association has only litigated this case to the extent necessary to compel appraisal and resolve this on-going dispute as to the amount of the Loss. Empire has continuously fought to avoid appraisal despite failing to produce a legitimate defense towards avoiding the contractual obligations that it drafted into its own Policy. Pursuant to this Court's guidance, the Association has demonstrated by record evidence that a valid

appraisal provision exists in the Policy, Empire has breached the appraisal provision of the Policy, and the Association has complied with all post-loss conditions precedent to invoking the appraisal provision. There is no genuine issue of material fact regarding the issue of compelling appraisal before this Court, and the Association therefore believes it is entitled to summary judgment on this issue as a matter of law.

**WHEREFORE**, the Association respectfully requests this Honorable Court: (i) enter an final summary judgment order on the issue of appraisal, thereby compelling Empire to take part appraisal as outlined in the Policy; (ii) stay the proceedings until the appraisal process is complete; and (iii) award any other relief the Court may deem just and proper.

Dated this 23rd day of December, 2020.

>BECKER & POLIAKOFF, P.A.
>Attorneys for Plaintiff
>Six Mile Corporate Park
>12140 Carissa Commerce Court, Suite 200
>Fort Myers, FL 33966
>Telephone: 239-433-7707
>Facsimile: 239-433-5933
>Primary E-mail:
>skurian@beckerlawyers.com
>Secondary E-mail:
>FTM-CNST-ServiceMail@beckerlawyers.com
>
>By: _____
>Sanjay Kurian, Esq.
>FBN: 0190659

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

BECKER & POLIAKOFF, P.A.
Attorneys for Plaintiff
Six Mile Corporate Park
12140 Carissa Commerce Court, Suite 200
Fort Myers, FL 33966
Telephone: 239-433-7707
Facsimile: 239-433-5933
Primary E-mail:
skurian@beckerlawyers.com
Secondary E-mail:
FTM-CNST- ServiceMail@beckerlawyers.com

By: _____
Sanjay Kurian, Esq.
FBN: 0190659

## SERVICE LIST

| Empire Indemnity Insurance Company, <br><br>*Defendant* | Pablo Caceres, Esq. <br> Kaitlyn M. Dugas, Esq. <br> **Butler Weihmuller Katz Craig LLP** <br> 400 N Ashley Dr Ste 2300 <br> Tampa, FL 33602-4305 <br> Telephone: 813-281-1900 <br> Facsimile: 813-281-0900 | pcaceres@butler.legal <br> kdugas@butler.legal |

14535129v.1 C15100/398702