UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CREEKSIDE CROSSING
CONDOMINIUM ASSOCIATION,
INC.,

      Plaintiff,

v.                                                            Case No.:  2:20-cv-136-JLB-MRM

EMPIRE INDEMNITY
INSURANCE COMPANY,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

Pending before the Court is Plaintiff's Motion to Compel Appraisal and Stay Proceedings or, Alternatively, Motion to Compel Appraisal and Enlarge Case Management Deadlines, filed on June 2, 2021.  (Doc. 56).  Defendant filed a Response in Opposition to Plaintiff's Second Motion to Compel Appraisal and Stay Proceedings on June 28, 2021.  (Doc. 62).  Additionally, Plaintiff filed Plaintiff's Reply to Defendant's Response in Opposition to Plaintiff's Motion to Compel Appraisal and Stay Proceedings.  (Doc. 66).  The motion is ripe for consideration.

For the reasons below, the Undersigned recommends that Plaintiff's Motion to Compel Appraisal and Stay Proceedings or, Alternatively, Motion to Compel Appraisal and Enlarge Case Management Deadlines (Doc. 56) be **GRANTED**.

## I.    BACKGROUND

This matter arises from an insurance dispute between Plaintiff, a condominium association owning twenty-seven buildings in Bonita Springs, Florida, and its commercial property insurer.  (*See* Docs. 56-1 at 1; 62; 14 at 20-21).[1] Defendant issued a commercial property insurance policy to Plaintiff bearing policy number ECL9490456-03 for the period December 12, 2016 to December 12, 2017, (the "Policy").  (*See* Docs. 14 at 11-87; 56-1 at 2).

The relevant provisions of the Policy – cited by the parties – read:

> **E.  Loss Conditions**
>
> The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.
>
> . . .
>
> **2.  Appraisal**
>
> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss.  In this event, each party will select a competent and impartial appraiser.  The two appraisers will select an umpire.  If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction.  The appraisers will state separately the value of the property and amount of loss.  If they fail to agree, they will submit their differences to the umpire.  A decision agreed to by any two will be binding.  Each party will:
>
> > **a.**  Pay its chosen appraiser; and

---

[1]  Pinpoint page citations for documents refer to CM/ECF pagination.

> **b.** Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we will still retain our right to deny the claim.

(Doc. 14 at 49; *see also* Docs. 56 at 2; 62 at 11).

On September 10, 2017, Hurricane Irma damaged a portion of Plaintiff's commercial property. (Doc. 56-1 at 1). Plaintiff submitted a claim to Defendant for the damage and Defendant issued some payment on the claim; however, a dispute arose as to the amount of loss. (*Id.* at 2). Accordingly, Plaintiff filed suit in the Circuit Court for Lee County, Florida. (*Id.*).

Eventually, Plaintiff filed the instant suit, which was removed to this Court on February 28, 2020. (*See* Docs. 1; 3). Plaintiff filed the operative complaint on April 30, 2020, (Doc. 14), and Defendant filed a motion to dismiss, (Doc. 18). The Court denied Defendant's motion to dismiss on September 2, 2020, but observed that "[Defendant's] refusal to submit to the appraisal provision in [the Policy] is the only properly pleaded issue in this action." (Doc. 36 at 8-9). However, upon a *sua sponte* reconsideration of its September 2, 2020 Order, the Court found that it "unintentionally narrowed the scope of [Plaintiff's] breach-of-contract claim," and found that Plaintiff's Amended Complaint "also states a breach-of-contract claim based on [Defendant's] purported undervaluation and failure to pay [Plaintiff's] covered losses." (Doc. 54 at 1 (citing Doc. 14 at 7-8)). Moreover, the Court found that "[Plaintiff's] pending motion for summary judgment[, (Doc. 39),] is not the proper vehicle to address appraisal, and the Court will deny that motion as moot.

Instead, [Plaintiff] shall file a separate motion to compel appraisal, to which

[Defendant] may file a response."  (Doc. 54 at 2).

Accordingly, Plaintiff filed the instant motion on June 2, 2021.  (Doc. 56).

## II.  ARGUMENTS

In support of its motion to compel appraisal, Plaintiff "restates and relies on

the memorandum of law and authority cited in its initial motion to compel appraisal

filed on July 8, 2020."  (Doc. 56 at 1 (citing Doc. 26)).  Additionally, Plaintiff

attached its July 8, 2020 motion.  (*See* Doc. 56-1).

Plaintiff asserts that:  (1) its property sustained covered damage as a result of

Hurricane Irma, (*see* Doc. 56-1 at 1-2); (2) the property was insured by the Policy

when the damage occurred, (*see id.* at 2); (3) Defendant acknowledged the loss and

issued partial payment on the loss, (*see id.*; *see also* Doc. 1 at 3 ("[Defendant]

previously paid Plaintiff $1,315,395.45.")); (4) a dispute arose as to the total amount

of loss, (*see* Doc. 56-1 at 2, 3 n.8 (citing Docs. 1 at 3; 5 at 2 n.1) ("[T]he amount in

controversy is at least $11,233,835.08.")); (5) it properly requested an appraisal under

the Policy, (*see id.* at 2, 8 n.16); and (6) Defendant improperly refused to engage in an

appraisal, (*see id.*).  Accordingly, Plaintiff contends that "in keeping with a policy of

promoting judicial economy and efficiency, [Defendant] should be held to its

contractual agreements, and thereby compelled to take part in the appraisal process."

(*Id.* at 10).

Plaintiff also argues that the instant litigation should be stayed pending the completion of an appraisal. (Docs. 56 at 2; 56-1 at 9-10). Alternatively, Plaintiff states that "the Court should extend all existing case management deadlines to allow for the completion of such discovery as may be necessary to allow the appraisal and litigation to proceed on a dual track basis." (Doc. 56 at 2-3 ("The undersigned has communicated with counsel for [Defendant] who has agreed a 120 day [sic] enlargement of all case management deadlines would be appropriate.")).

In response, Defendant first contends that compelling appraisal "is an injunctive remedy in the form of specific performance," which cannot be required "because the Complaint fails to plead and Plaintiff fails to show grounds for [Defendant's] specific performance." (Doc. 62 at 1-2 (capitalizations omitted)). In support, Defendant asserts that "[m]ost federal district courts in Florida" agree that requiring parties to engage in appraisal constitutes "an equitable and injunctive remedy that must be *pleaded* and *proven*, at the very least, *as specific performance* on the Policy." (*Id.* at 2 (emphasis in original)). Defendant also argues that neither *Johnson v. Nationwide Mut. Ins. Co.*, 828 So. 2d 1021 (Fla. 2002), nor Florida cases enforcing appraisal through Florida's Arbitration Code before *Allstate Ins. Co. v. Suarez*, 833 So. 2d 762 (Fla. 2002), provide this Court with the authority to compel appraisal. (*See* Doc. 62 at 3-4). Rather, Defendant contends that "the only available source of power for federal courts to compel appraisals is that to grant injunctive relief such as specific performance." (*Id.* at 5). Building on that conclusion, Defendant asserts that "[b]ecause Plaintiff's complaint and Motion fail to invoke and show entitlement to

[an equitable remedy such as specific performance], the Court should deny the Motion." (*Id.* at 8; *see also id.* at 6-8).

Second, Defendant argues that appraisal cannot be compelled before a final determination is made as to whether Defendant breached the Policy's appraisal provision. (*Id.* at 9-10). Defendant also contends that "this Court's earlier Order correctly reasoned that summary judgment was required if appraisal was to be compelled." (*Id.* at 9 (citing Doc. 36 at 8)). Moreover, Defendant asserts that the Court's rejection of its related arguments in *CMR Constr. & Roofing, LLC v. Empire Indem. Ins. Co.*, No. 2:18-cv-779-FtM-99UAM, 2019 WL 2281678, at *3 (M.D. Fla. May 29, 2019) and *Waterford Condo. Ass'n of Collier Cty., Inc. v. Empire Indem. Ins. Co.*, No. 2:19-cv-81-FtM-38NPM, 2019 WL 3852731, at *2 (M.D. Fla. Aug. 16, 2019) are distinguishable from the instant case because here, Defendant argues, "compelling appraisal is a remedy in the form of specific performance [that can only be granted] upon an adjudication of the underlying allegations that [Defendant] breached the [Policy]." (Doc. 62 at 10 (citations omitted)).

Third, Defendant contends that "Plaintiff has failed to correctly invoke appraisal by designating an indisputably biased appraiser." (*Id.* at 11). In support, Defendant asserts that Plaintiff's designated appraiser, George Keys, is not an "impartial appraiser," as evinced by his disqualification in *State Farm Fla. Ins. Co. v. Parrish*, 312 So. 3d 145, 149 (Fla. 2d DCA 2021), *review granted*, 2021 WL 6014958 (Fla. Dec. 21, 2021), and by the vacatur of an appraisal award in *Auto-Owners Ins. Co.*

6

*v. Summit Park Townhome Ass'n*, 198 F. Supp. 3d 1239, 1243 (D. Colo. 2016).  (Doc. 62 at 11-12 (citations omitted) ("[The insurer] objected to Keys' involvement in the appraisal process and moved to vacate the appraisal award on the grounds that it had discovered facts showing that Keys was not impartial as required by the appraisal provision. . . .  [The Court] sustained the objection and vacated the appraisal award.")).  In sum, Defendant claims that because Plaintiff appointed George Keys as its "impartial appraiser," it breached the appraisal provision of the Policy and cannot seek to enforce it.  (*See* Doc. 62 at 11-13).  Alternatively, if appraisal is compelled, Defendant "requests that Plaintiff name a different, competent and impartial appraiser."  (*Id.* at 13).

Fourth, if appraisal is compelled, Defendant contends that the Court should: (1) require the appraisal panel to issue its award in a specific form, (*see id.* at 13-14 (citations omitted)); and (2) impose prospective instructions on the appraisal panel to ensure that the parties receive minimum due process guarantees, (*see id.* at 14 (citations omitted)).  Specifically, Defendant states that "[t]here is no good reason to avoid a line-item appraisal award and . . . the appraisers should be limited to consider Actual Cash Value ("ACV"), not Replacement Cost ("RC")."  (*Id.* at 14).

Finally, Defendant argues that "[e]ven assuming [Plaintiff] has properly pled its case and established entitlement to appraisal, discovery should proceed unabated [because t]o halt discovery now would interfere with [Defendant's] ability to fully investigate any potential fraud."  (*Id.* at 15).

By way of reply, Plaintiff asserts that:  (1) appraisal is not akin to an injunctive remedy, (*see* Doc. 66 at 1-5 (citations omitted)); (2) summary judgment or a final disposition of the underlying claims is not necessary to compel appraisal, (*see id.* at 5-6 (citations omitted)); (3) the determination of a selected appraiser's impartiality does not prevent the Court from compelling appraisal, (*see id.* at 6-8 (citations omitted)); (4) the Court should not impose prospective instructions on the appraisal panel or require the panel to issue the appraisal award in a specific form, (*see id.* at 8-9 (citations omitted)); and (5) "good cause and reasonableness exist to stay this litigation pending the completion of appraisal or, alternatively, enlarge all existing case management deadlines by 120 days," (*see id.* at 9-10 (citations omitted)).

## III.    LEGAL STANDARD

In a diversity case, the substantive law of the forum state – in this case Florida – applies.  *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1020 (11th Cir. 2014).  "In Florida, appraisal provisions contained within insurance policies are generally treated the same as arbitration provisions."  *Wright Way Emergency Water Removal, LLC v. Mt. Hawley Ins. Co.*, No. 8:16-cv-1163-T-17MAP, 2016 WL 9526569, at *2 (M.D. Fla. July 29, 2016).  Thus, "motions to compel appraisal should be granted whenever the parties have agreed to the provision."  *Id.* (citing *Preferred Mut. Ins. Co. v. Martinez*, 643 So. 2d 1101, 1102 (Fla. 3d DCA 1994)).  Additionally, "enforcement of appraisal provisions [is] preferred over lawsuits 'as they provide a mechanism for prompt resolution of claims and discourage the filing of needless

lawsuits.'" *Id.* (quoting *First Protective Ins. Co. v. Hess*, 81 So. 3d 482, 485 (Fla. 1st DCA 2011)).

Furthermore, "[u]nder Florida law, a dispute regarding a policy's coverage for a loss is exclusively a judicial question." *Gonzalez v. Am. Sec. Ins. Co.*, No. 8:15-cv-1515-36EAJ, 2015 WL 12852303, at *4 (M.D. Fla. Nov. 10, 2015) (citations omitted). "However, when an insurer acknowledges that there is a covered loss, any dispute regarding the amount of such loss is appropriate for appraisal." *Evanston Ins. Co. v. Etcetera, Etc Inc.*, No. 2:18-cv-103-FtM-99MRM, 2018 WL 3526672, at *3 (M.D. Fla. July 23, 2018) (citations omitted).

## IV.   ANALYSIS

The Undersigned finds that appraisal should be compelled in this case. Plaintiff states that it sustained a covered loss and complied with all of its post-loss obligations. (*See* Doc. 56-1 at 1-2). Additionally, Plaintiff alleges that a dispute has arisen as to the total amount of loss. (*Id.* at 2, 3 n.8 (citations omitted)). Notably, Defendant does not contest these specific assertions. (*See* Doc. 62). Accordingly, because there is a dispute over the amount of a covered loss and the Policy contains an appraisal provision, the Undersigned finds that requiring the parties to engage in an appraisal is appropriate in this case. *See Johnson*, 828 So. 2d at 1025; *Evanston*, 2018 WL 3526672, at *3.

Moreover, the Undersigned is not persuaded by Defendant's arguments as to why appraisal should not be ordered. To begin, Defendant's arguments request

sweeping changes to current Florida law, but are mostly supported by citations to authority outside of Florida and the Eleventh Circuit.  (*See* Doc. 62).  While the cited cases may hold some persuasive value, they should not be used to overturn extensive Florida precedent.

### A.   Whether Appraisal Can Only Be Compelled as a Form of Specific Performance.

As to Defendant's first specific contention, that compelling appraisal "is an injunctive remedy in the form of specific performance," which cannot be required "because the Complaint fails to plead and Plaintiff fails to show grounds for [Defendant's] specific performance," (*id.* at 1-2 (capitalizations omitted)), the Undersigned is not persuaded.  Rather, the Undersigned finds that Plaintiff is not required to plead and prove the elements of specific performance for the Court to compel appraisal.

"In Florida, appraisal provisions contained within insurance policies are generally treated the same as arbitration provisions."  *Wright Way Emergency Water Removal, LLC*, 2016 WL 9526569, at *2 (citations omitted); *see also Webb Roofing & Constr., LLC v. FedNat Ins. Co.*, 320 So. 3d 803, 806 (Fla. 2d DCA 2021) ("While appraisal and arbitration differ in some important respects, Florida case law recognizes that appraisal clauses are often treated similarly to arbitration clauses.").  Therefore, "motions to compel appraisal should be granted whenever the parties have agreed to the provision."  *Wright Way Emergency Water Removal, LLC*, 2016 WL 9526569, at *2 (citations omitted).  Additionally, "enforcement of appraisal

provisions [is] preferred over lawsuits 'as they provide a mechanism for prompt resolution of claims and discourage the filing of needless lawsuits.'" *Id.* (citing *Hess*, 81 So. 3d at 485).

Thus, Florida case law suggests that methods of alternative dispute resolution, such as appraisal, should be employed when possible. Moreover, this Court recently addressed this specific issue and noted that "parties can seek appraisal through breach of contract and declaratory judgment actions." *Positano Place at Naples I Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:21-cv-178-SPC-NPM, 2021 WL 1610089, at *1 (M.D. Fla. Apr. 26, 2021) (citing *Castillo at Tiburon Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:20-cv-468-FtM-38MRM, 2020 WL 7587181, at *1-2 (M.D. Fla. Dec. 22, 2020); *Creekside Crossing Condo. Ass'n v. Empire Indem. Ins.*, No. 2:20-cv-00136-JLB-MRM, 2020 WL 5973177, at *2-4 (M.D. Fla. Sept. 2, 2020)). Here, because Plaintiff's operative complaint asserts claims for both breach of contract and declaratory judgment, (*see* Doc. 14 at 4-8), the Undersigned finds that appraisal can be compelled, *see Positano*, 2021 WL 1610089, at *1. Indeed, the presiding United States District Judge in this case forecast this exact result in his *sua sponte* May 19, 2021 Order that (1) found that Plaintiff's motion for summary judgment was "not the proper vehicle to address appraisal," and (2) required Plaintiff to file a separate motion to compel appraisal. (*See* Doc. 54).

Additionally, the Undersigned notes that while each case cited by Defendant finds that a party *may* bring a motion to compel appraisal after asserting a claim for

specific performance, none stands for Defendant's proposition that a party *must* assert a claim for specific performance to compel appraisal.  (*See* Doc. 62 at 2-8 (citing *Residences at Eur. Vill. Condo. Ass'n, Inc. v. Rockhill Ins. Co.*, No. 3:19-cv-1490-J-20JRK, 2020 WL 5948314, at *5 (M.D. Fla. July 17, 2020); *Parkway Baptist Church, Inc. v. Guideone Elite Ins. Co.*, No. 10-23965-CV, 2011 WL 13099891, at *3 (S.D. Fla. Sept. 21, 2011); *La Gorge Palace Condo Ass'n, Inc. v. QBE Ins. Corp.*, 733 F. Supp. 2d 1332 (S.D. Fla. 2010); *People's Tr. Ins. Co. v. Valentin*, 305 So. 3d 324, 327 (Fla. 3d DCA 2020); *People's Tr. Ins. Co., v. Nowroozpour*, 277 So. 3d 135, 136 (Fla. 4th DCA 2019))).  Moreover, none of the cases Defendant cites that apply Florida law directly address a motion to compel appraisal.  (*See id.* (citations omitted)).

To the extent that Defendant argues the Court does not possess the power to compel appraisal outside of granting specific performance, (*see id.* at 3-8 (citations omitted)), the Undersigned is not persuaded.  Defendant summarily concludes that *Allstate Ins. Co. v. Suarez*, 833 So. 2d 762 (Fla. 2002) abrogated the Court's authority to compel appraisals by overruling *U.S. Fid. & Guar. Co. v. Romay*, 744 So. 2d 467, 469 (Fla. 3d DCA 1999).  (*See* Doc. 62 at 4).  Defendant supports its contention that *Suarez* divested the Court of the authority to compel appraisals by citing to *Nationwide Mutual Fire Insurance Co. v. Schweitzer*, 872 So. 2d 278, 279 (Fla. 4th DCA 2004), and, without substantive discussion, deducing that *Schweitzer* "recogniz[ed the] abrogation of [*Romay*]."  (*See* Doc. 62 at 4).  However, upon a review of the

relevant cases, the Undersigned finds that Defendant reads conclusions into both *Schweitzer* and *Suarez* that were not made.

Defendant's arguments rely on *Romay*, *Suarez*, and *Schweitzer*.  In *Romay*, Florida's Third District Court of Appeal noted that "[a]ppraisal provisions in insurance policies such as the one in the instant case have generally been treated as arbitration provisions."  744 So. 2d at 469 (finding, *inter alia*, that appraisal can be compelled through Fla. Stat. § 682.03, Florida's Arbitration Code).  Thereafter, in *Suarez*, the Supreme Court of Florida held that "[appraisal] proceedings should be conducted in accord with [the insurance contract's] provisions, rather than by the wholly different proceedings contemplated by an agreement to arbitrate."  833 So. 2d at 766 ("[A]n informal appraisal proceeding, *not* a formal arbitration hearing . . . was intended and agreed upon by the parties.").  Finally, in *Schweitzer*, Florida's Fourth District Court of Appeal found that "[i]t follows from *Suarez* that an order granting or denying an appraisal is not appealable as an order involving entitlement to arbitration."  *Schweitzer*, 872 So. 2d at 279 (finding that *Romay* was "overruled by *Suarez* on the issue of appealability of an order involving entitlement to an appraisal").

Applying these cases here, the Undersigned finds that *Suarez* did not, as Defendant contends, overturn Florida's prior policy and precedent that "appraisal provisions contained within insurance policies are generally treated the same as arbitration provisions . . . [and, t]herefore, motions to compel appraisal should be

granted whenever the parties have agreed to the provision," *Wright Way Emergency Water Removal, LLC*, 2016 WL 9526569, at *2 (citing *Fla. Ins. Guar. Ass'n, Inc. v. Castilla*, 18 So. 3d 703, 704 (Fla. 4th DCA 2009); *Romay*, 744 So. 2d at 469; *Martinez*, 643 So. 2d at 1102).  Additionally, although *Schweitzer* found that *Suarez* overruled *Romay* on the specific issue of appealability of an order involving entitlement to an appraisal, it did not refer to or consider the *Suarez* decision's effect on the Court's authority to compel appraisal pursuant to Fla. Stat. § 682.03.  *See Schweitzer*, 872 So. 2d at 279.  Rather, both *Schweitzer* and *Suarez* are examples of specific exceptions to the general Florida law and policy that "[a]ppraisal provisions in insurance policies [are] generally . . . treated as arbitration provisions."  *Romay*, 744 So. 2d at 469, *rev'd in part on other grounds*, *Suarez*, 833 So. 2d at 765.

The Court arrived at the same conclusion on an analogous issue in *Three Palms Pointe, Inc. v. State Farm Fire & Cas. Co.*, 250 F. Supp. 2d 1357, 1361 (M.D. Fla. 2003), *aff'd*, 362 F.3d 1317 (11th Cir. 2004).  The Court in *Three Palms Pointe, Inc.* noted that, while the Florida Supreme Court in *Suarez* held that the formal procedures of Florida's Arbitration Code should not be applied to the actual appraisal process, Florida's Arbitration Code could still be applied to determine that the appraisal award was confirmable.  *Id.* at 1361-62 (citing *Suarez*, 833 So. 2d at 765-66) ("While acknowledging some differences between appraisal and arbitration provisions, Florida courts have generally treated appraisal clauses as 'narrowly restricted' arbitration provisions . . . [and] have repeatedly utilized Florida Statutes § 682.03 as

a basis to compel appraisals." (citations omitted)); *see also Mont Claire at Pelican Marsh Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:19-cv-601-SPC-MRM, 2021 WL 3476406, at *3 (M.D. Fla. May 24, 2021), *report and recommendation adopted*, 2021 WL 3205694 (M.D. Fla. July 29, 2021) ("*Suarez* did not modify existing Florida law on confirmation of appraisal awards.").

In sum, the Undersigned finds that this Court maintains the ability to compel appraisal outside of granting specific performance based on Florida law and policy. *See, e.g.*, *Baldwin Realty Grp. Inc. v. Scottsdale Ins. Co.*, No. 6:18-cv-785-Orl-41DCI, 2018 WL 4381206, at *7 (M.D. Fla. Sept. 6, 2018), *report and recommendation adopted*, 2018 WL 5221228 (M.D. Fla. Oct. 22, 2018) (recommending that the parties be compelled to participate in an appraisal even when the insurer was only sued under a breach-of-contract theory); *Waterford Condo. Ass'n of Collier Cty., Inc. v. Empire Indem. Ins. Co.*, No. 2:19-cv-81-FtM-38NPM, 2019 WL 4861196, at *1 (M.D. Fla. Oct. 2, 2019) (denying a motion for reconsideration of an order granting a motion to compel appraisal); *Citrus Contracting LLC v. Philadelphia Indem. Ins. Co.*, No. 6:19-cv-1161-Orl-31LRH, 2019 WL 5191417, at *2 (M.D. Fla. Sept. 30, 2019), *report and recommendation adopted*, 2019 WL 5190925 (M.D. Fla. Oct. 15, 2019) (ordering the parties to engage in an appraisal because the parties disputed the amount of loss); *J.P.F.D. Inv. Corp. v. United Specialty Ins. Co.*, No. 6:17-cv-1415-Orl-40GJK, 2017 WL 4685254, at *3 (M.D. Fla. Sept. 29, 2017), *report and recommendation adopted*, 2017

WL 4657721 (M.D. Fla. Oct. 17, 2017) (ordering the parties to engage in an appraisal as provided for in the relevant insurance contract).

**B.      Whether Appraisal Can Be Compelled Absent any Motion for Summary Judgment.**

As to Defendant's second argument, that appraisal cannot be compelled before a final determination is made as to whether Defendant breached the Policy's appraisal provision, (*see* Doc. 62 at 9-10), again, the Undersigned is not persuaded.

As stated above, "[u]nder Florida law, a dispute regarding a policy's coverage for a loss is exclusively a judicial question." *Gonzalez*, 2015 WL 12852303, at *4 (citations omitted). "However, when an insurer acknowledges that there is a covered loss, any dispute regarding the amount of such loss is appropriate for appraisal." *Evanston*, 2018 WL 3526672, at *3 (citations omitted); *see also Johnson*, 828 So. 2d at 1025; *Romay*, 744 So. 2d at 469.

Here, appraisal is the appropriate means of alternative dispute resolution because it was agreed to by the parties in the Policy. (Doc. 14 at 49; *see also* Docs. 56 at 2). Moreover, as noted above, the Court already found that a "motion for summary judgment is not the proper vehicle to address appraisal." (Doc. 54 at 2 (denying Plaintiff's motion for summary judgment and, instead, requiring Plaintiff to file a separate motion to compel appraisal)). Specifically, the Court has explained that "[u]nlike a summary judgment motion, a determination of whether appraisal is appropriate does not determine whether there is a genuine disputed material fact or whether the moving party is entitled to judgment." *CMR Constr. & Roofing, LLC v.*

*Empire Indem. Ins. Co.*, No. 2:18-cv-779-FtM-99UAM, 2019 WL 2281678, at *3 (M.D. Fla. May 29, 2019) (rejecting an insurer's argument that a motion to compel appraisal constituted an improper motion for summary judgment); *see also Waterford*, 2019 WL 3852731, at *2 (same).

Moreover, to the extent that Defendant argues that *CMR* and *Waterford* are distinguishable "because compelling appraisal is [only] a remedy in the form of specific performance," (Doc. 62 at 10), the Undersigned is unpersuaded.  Rather, as thoroughly addressed above, "parties can seek appraisal through breach of contract and declaratory judgment actions" as a form of alternative dispute resolution, rather than only as a form of specific performance.  *See Positano*, 2021 WL 1610089, at *1 (citations omitted).  Thus, to the extent that Defendant attempts to argue that appraisal can only be compelled after an adjudication of the allegation that Defendant breached the Policy, the Undersigned is not persuaded.

Accordingly, the Undersigned finds that Plaintiff's motion is procedurally proper and appraisal can be compelled even without a motion for summary judgment.  *See Johnson*, 828 So. 2d at 1025; *Romay*, 744 So. 2d at 469.

**C.     Whether Appraisal Can Be Compelled After the Designation of an Allegedly Biased Appraiser.**

Third, Defendant contends that because Plaintiff appointed George Keys as its "impartial appraiser," Plaintiff breached the appraisal provision of the Policy and cannot seek to enforce it.  (*See* Doc. 62 at 11-13 (citations omitted)).  The Undersigned disagrees.  Rather, to rectify Plaintiff's selection of an allegedly biased

17

appraiser, the Undersigned finds it appropriate to disqualify George Keys, Plaintiff's designated appraiser, and require each party to select "a competent and impartial appraiser" as required by the Policy. *See Verneus v. Axis Surplus Ins. Co.*, No. 16-21863-CIV, 2018 WL 3417905, at *7 (S.D. Fla. July 13, 2018) (granting the insurer's motion to disqualify a biased appraiser, requiring the insured to designate an impartial appraiser, and ordering the parties to engage in appraisal).

In reaching this conclusion, the Undersigned first notes that Defendant objected to George Keys' designation as an impartial appraiser in its February 17, 2021 Amended Response to Plaintiff's Motion for Summary Judgment, (*see* Doc. 48 at 14-18), and in its response to the instant motion, (*see* Doc. 62 at 11-13 (citing *Parrish*, 312 So. 3d at 149 ("Mr. Keys cannot serve as a disinterested appraiser (in any meaningful sense of that term) in an appraisal process of his client's dispute."); *Summit Park*, 198 F. Supp. 3d at 1243 (noting the vacatur of an appraisal award issued by an appraisal panel upon which George Keys acted as an appraiser)). Despite Defendant's repeated arguments as to George Keys' alleged bias, Plaintiff failed to defend the impartiality of its designated appraiser, (*see* Docs. 49 at 6-7; 66 at 6-8), instead arguing that the designation of a biased appraiser does not bar appraisal, (*see id.*). The Undersigned also considers that, in *State Farm Fla. Ins. Co. v. Parrish*, 312 So. 3d 145, 149 (Fla. 2d DCA 2021), *review granted*, 2021 WL 6014958 (Fla. Dec. 21, 2021), George Keys was disqualified as an impartial appraiser because he was "the president of [the insured's] public adjusting firm, [and] ha[d] a vested interest in obtaining the highest possible recovery because his compensation w[as] a percentage

18

of it," 312 So. 3d at 149, and Defendant has alleged that "[t]he same reasons for disqualification are present here," (Doc. 62 at 12).  Again, Plaintiff has not responded to Defendant's assertion.  (*See* Docs. 49; 66).

Thus, in light of Plaintiff's failure to respond to Defendant's allegations, the Undersigned finds that George Keys must be disqualified as Plaintiff's impartial appraiser.  Nonetheless, as highlighted by Plaintiff, the disqualification of Plaintiff's designated appraiser does not bar appraisal and can be easily rectified by ordering Plaintiff to "designate an alternate, impartial, competent appraiser."  (Doc. 66 at 7 (citations omitted)); *see Verneus*, 2018 WL 3417905, at *7.

Accordingly, the Undersigned finds that appraisal should be compelled and both parties must "select a competent and impartial appraiser" as required by the Policy.  (*See* Doc. 14 at 49).

**D.     Whether the Court Should Impose Prospective Instructions on the Appraisal Panel.**

For its fourth argument, Defendant contends that the Court should:  (1) impose prospective instructions on the appraisal panel to ensure that the parties receive due process protections, (*see* Doc. 62 at 14); and (2) require the appraisal panel to issue its award in a specific form, (*see id.* at 13-14 (citations omitted)).

Defendant specifically argues that "[t]here is no good reason to avoid a line-item appraisal award . . . [and] the appraisers should be limited to consider Actual Cash Value ("ACV"), not Replacement Cost ("RC"), since Plaintiff has neither alleged nor actually performed or spent on repairs the amount that it seeks in this

suit." (*Id.* at 14).  Plaintiff objects to Defendant's requests by asserting that the Court should order appraisal to proceed according to the plain terms of the Policy to which the parties agreed.  (*See* Doc. 66 at 8-9).

"Courts may not 'rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties.'"  *Intervest Const. of Jax, Inc. v. Gen. Fid. Ins. Co.*, 133 So. 3d 494, 497 (Fla. 2014) (citation omitted).

Crucially, Defendant does not cite the Policy's language in requesting that the Court impose appraisal guidelines and require specific processes and award forms. (*See* Doc. 62).  In fact, the Policy's appraisal provision states only that:

> In th[e] event [of an appraisal], each party will select a competent and impartial appraiser.  The two appraisers will select an umpire.  If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction.  The appraisers will state separately the value of the property and amount of loss.  If they fail to agree, they will submit their differences to the umpire.  A decision agreed to by any two will be binding.

(Doc. 14 at 49).  The above language does not require that the Court (1) impose specific guidelines on the appraisal panel, (2) mandate a specific appraisal process, or (3) compel a specific form for the appraisal award.  (*See id.*).

The Undersigned finds that the Court should not impose guidelines or require specific processes during appraisal as that would amount to rewriting the parties' Policy to add conditions for the appraisal process that were not part of the parties' bargain.  *See Coral Reef Metro, LLC v. Scottsdale Ins. Co.*, No. 2:18-cv-460-FtM-38CM, 2019 WL 721286, at *3 (M.D. Fla. Jan. 30, 2019), *report and recommendation adopted*,

2019 WL 700114 (M.D. Fla. Feb. 20, 2019) ("[T]he Court recommends enforcing the appraisal provision as it is written rather than fashioning requirements to which the parties did not agree."); *Waterford*, 2019 WL 3852731, at *3 ("[W]hile the Court agrees . . . that a line-item breakdown might help decide coverage disputes, it will not rewrite the policy to require one.").  Additionally, to the extent that Defendant asserts that an appraisal award should only be limited to determining actual cash value instead of replacement cost, this Court already found an identical argument ineffective as a basis to deny appraisal.  *CMR Constr. & Roofing, LLC*, 2019 WL 2281678, at *4 ("These may be defenses to the amount of damages that CMR may obtain, but are not bases for denying appraisal.").

Accordingly, based on Plaintiff's opposition to Defendant's request, the Undersigned finds that the Court should not rewrite the parties' Policy to require the appraisal panel to issue the appraisal award in a specific form.  *See Waterford*, 2019 WL 3852731, at *3; *CMR Constr. & Roofing, LLC*, 2019 WL 2281678, at *4; *Coral Reef Metro*, 2019 WL 721286, at *3.

### E.    Whether the Underlying Proceedings Should Be Stayed Pending Completion of the Appraisal.

Lastly, Defendant contends that "[e]ven assuming Plaintiff . . . established entitlement to appraisal, discovery should proceed unabated . . . [because t]o halt discovery now would interfere with [Defendant's] ability to fully investigate any potential fraud."  (Doc. 62 at 15).  In contrast, Plaintiff seeks to have this litigation stayed pending the completion of appraisal "because it will allow the parties to

resolve a central issue to this litigation . . . without the use of judicial resources." (*See* Doc. 66 at 9-10). Plaintiff alternatively requests that the Court "enlarge all existing case management deadlines by 120 days." (*Id.* at 10).

Upon a review of the allegations underlying this dispute, the Undersigned finds that a stay of these proceedings is appropriate as the completion of the appraisal may resolve a majority, if not all, of the parties' dispute. Defendant's perfunctory argument that it "has exposed potential fraud underlying Plaintiff's claim," (Doc. 62 at 15), does not persuade the Undersigned that permitting the parties to continue to engage in discovery will lead to a more efficient resolution of the parties' underlying claims. *See Waterford*, 2019 WL 3852731, at *3 ("[A] stay would preserve judicial resources because appraisal might resolve the parties' dispute.").

## V.   CONCLUSION

Accordingly, the Undersigned **RESPECTFULLY RECOMMENDS** that:

1.   Plaintiff's Motion to Compel Appraisal and Stay Proceedings or, Alternatively, Motion to Compel Appraisal and Enlarge Case Management Deadlines (Doc. 56) be **GRANTED**;

2.   This action be **STAYED** pending completion of the appraisal process and the Clerk of Court directed to add a stay flag to this case;

3.   The parties be directed to jointly notify the Court of the names of (a) each party's selected appraiser and (b) the umpire, by a date certain;

4.    The parties be directed to file a joint report on the status of appraisal every ninety days; and

5.    The parties be directed to file a joint notice stating (a) what issues, if any, remain for the Court to resolve, (b) whether the stay needs to be lifted, and (c) how this action should proceed, no later than fourteen days after the conclusion of the appraisal.

**RESPECTFULLY RECOMMENDED** in Fort Myers, Florida on January 31, 2022.

Mac R. McCoy
United States Magistrate Judge

## <u>NOTICE TO PARTIES</u>

A party has fourteen days from the date the party is served a copy of this Report and Recommendation to file written objections to the Report and Recommendation's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C).  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.  A party wishing to respond to an objection may do so in writing fourteen days from the date the party is served a copy of the objection.  The parties are warned that the Court will not extend

these deadlines.  To expedite resolution, the parties may also file a joint notice

waiving the fourteen-day objection period.

Copies furnished to:

Counsel of Record
Unrepresented Parties